# IN THE SUPREME COURT OF TEXAS

════════════

No. 13-0515

════════════

JOHN KLUMB, VERONICA MCCLELLAND, VIVIAN MONTEJANO,
JOHN GONZALEZ, ANITA ROBLES, AND CHARMAINE PILGRIM,
ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED,
AND THE CITY OF HOUSTON, PETITIONERS,

v.

HOUSTON MUNICIPAL EMPLOYEES PENSION SYSTEM,
BARBARA CHELETTE, DAVID L. LONG, LENARD POLK,
ROY SANCHEZ, AND LONNIE VARA, RESPONDENTS

════════════════════════════════════════════════════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FIRST DISTRICT OF TEXAS

════════════════════════════════════════════════════════

**Argued November 6, 2014**

JUSTICE GUZMAN delivered the opinion of the Court.

The dispute in this case arises in the context of a unique statutory scheme that confers expansive administrative authority and broadly prohibits judicial review. At issue is whether Houston Municipal Employees Pension System (HMEPS) board members violated HMEPS's enabling statute by requiring the petitioners' continued participation in the City of Houston's defined-benefit pension plan. As provided by statute, the pension board has exclusive, final, and binding authority to interpret, construe, and supplement omissions in the statute and to determine

all questions pertaining to eligibility for membership, services, and benefits. TEX. REV. CIV. STAT. ANN. ART. 6243h, § 2(x)-(y). Consistent with this legislative mandate, we have held that HMEPS's enabling statute precludes judicial review of such matters. *Houston Mun. Emps. Pension Sys. v. Ferrell*, 248 S.W.3d 151, 158-59 (Tex. 2007). To defeat the presumptive jurisdictional bar, the petitioners assert that subject-matter jurisdiction exists here because the pension-board members acted *ultra vires* and violated the Texas Constitution by augmenting the statute rather than interpreting it.

The underlying dispute arose when the City of Houston attempted to remove a division of employees from the pension system by forming quasi-governmental entities to perform the same governmental functions using the same employees. Contemporaneously with the City's restructuring efforts, the pension board determined that those employees remained under the City's effective control and payroll and therefore fell within the ambit of the statutory definition of "employee," which defines an individual's status as a HMEPS member. *See* TEX. REV. CIV. STAT. ANN. ART. 6243h, §§ 1(11) (defining "employee"), (13) (defining "member"). The board's decision resulted in otherwise eligible members being denied "retiree" status and further required affected employees to continue making contributions to the pension fund despite being under the immediate employ of a third-party entity. *See id.* §§ 1(22) (defining "retiree"), (24) (defining "separation from service"). The individual petitioners and the City assert that the pension board unlawfully redefined the term "employee" to capture these employees after they had ceased working for the City. Considering HMEPS and the board members' plea to the jurisdiction, the trial court found jurisdiction to be lacking, and the court of appeals affirmed. 405 S.W.3d 204, 209 (Tex. App.—Houston [1st Dist.]

2

2013).

We conclude the trial court lacks subject-matter jurisdiction over the claims asserted because (1) the pension board acted within the scope of its broad statutory authority in construing the term "employee" and (2) the individual petitioners have not asserted viable constitutional claims. Accordingly, we affirm the court of appeals' judgment.

## I. Background

HMEPS is organized and operated under Article 6243h of the Texas Revised Civil Statutes, which requires cities with a population of more than 1.5 million to make contributions to an employee pension fund in an amount based in part on the combined salary of the pension system's members.[1] TEX. REV. CIV. STAT. ANN. ART. 6243h, §§ 1-28; *see also id.* § 8(d). The statute defines a "member" of the pension fund as "each active employee included in the pension system," except for statutorily ineligible employees. *Id.* § 1(13). An "employee" is "any [eligible] person . . . who holds a municipal position[,] . . . whose name appears on a regular full-time payroll of a city[,] . . . and who is paid a regular salary for services." *Id.* § 1(11).

HMEPS is governed by a Board of Trustees imbued with broad authority to administer, manage, and operate the pension fund. *See id.* § 2(x). Among other powers, the pension board can (1) adopt written rules and guidelines for the administration of the pension fund; (2) interpret and construe the Act and any summary-plan documents and procedures, provided such construction is consistent with section 401 of the Internal Revenue Code of 1986, as amended (IRC); (3) "correct

---

[1] Presently, only the City of Houston meets Article 6243h's population threshold.

3

any defect, supply any omission, and reconcile any inconsistency" in the statute in the manner and to the extent the board deems "for the greatest benefit of all members"; and (4) determine all legal and factual questions pertaining to the fund's administration and eligibility for membership, services, and benefits. *Id.* So broad is the board's authority that the statute expressly mandates that "[t]he determination of any fact by the pension board and the pension board's interpretation of [the] Act are final and binding on any interested party, including members, deferred participants, retirees, . . . and the city." *Id.* § 2(y). But though the board's authority under the statute is indisputably broad, the allegation in the underlying lawsuit is that the pension board crossed the line between interpreting the statute, which it is expressly authorized to do, and unlawfully altering it by supplementing the statutory definition of "employee" in a manner that encompasses personnel the City has outsourced to a third-party entity.

At the heart of the dispute is the City's effort to reduce its pension-fund contributions by using outsourcing as part of a comprehensive cost-saving initiative. Historically, the City has employed more than 100 people in its Convention and Entertainment Facilities Department (convention department) to operate municipally-owned properties such as theaters, convention centers, and parking lots. In May 2011, however, the City announced plans to remove those employees from the municipal payroll—and thus the pension system—by outsourcing convention and entertainment municipal functions to Houston First Corporation, a City-controlled, tax-funded local government corporation. Among other indicia of control, Houston First's budget is approved by the Houston City Council, and its board is appointed by the mayor and confirmed by the city council.

4

In response to the City's transition plan, the pension board announced in August 2011 that the definition of "employee" in Article 6243h "includes a full-time employee of a Texas local government corporation . . . controlled by the City, upon a determination by the External Affairs Committee of the Board of Trustees that such [local government corporation]'s employees are Employees for purposes of the [HMEPS] Plan." Thereafter, the board amended the pension-plan documents to incorporate this construction of the term "employee."

Undeterred, the City formed a nonprofit entity named Houston First Foundation and notified the pension board that the newly formed entity would employ all the City employees who had been slated to join Houston First Corporation. Believing Houston First Foundation to be a wholly-owned and controlled subsidiary of Houston First Corporation—and by extension, the City—the pension board adopted a resolution in October 2011 that reiterated the previously adopted construction of the term "employee" and further announced that "employees of any entity controlled, directly or indirectly, by [the City] are considered Employees for purposes of membership in HMEPS, unless the External Affairs Committee expressly determines otherwise."

Subsequently, the City abandoned Houston First Foundation and formed another nonprofit corporation called Convention and Cultural Services, Inc. (CCSI) to operate in conjunction with Houston First to provide convention and entertainment services to the City. Although Houston First would still provide those services to the City, it would not employ the service personnel directly. Instead, CCSI would employ and lease the workforce to Houston First, its only client. By agreement, Houston First was obligated to fully reimburse CCSI for "all internal and external costs and expenses associated with" the provision of personnel. CCSI purported to operate independently, but Houston

5

First and CCSI had overlapping executives, some of whom had been City employees.

In a letter to the pension system's executive director, the City Attorney expressly disavowed any right or ability of the City to control CCSI, stating "[n]either the City, the Mayor, nor City Council will have any appointment authority or control over the corporation or its board of directors." Instead, CCSI was described as "a non-governmental, non-profit corporation whose board will be self perpetuating." The letter further explained that "[CCSI] will be contracting for its own employee benefits, including a [401(k)] plan, and will not participate in any City of Houston benefit programs." The City thus took the position that following transition of convention department employees to CCSI, the employees would no longer be City employees or HMEPS members and, as a result, the City would not be obligated to make contributions to the pension fund based on those employees' salaries.

Despite this maneuver, the pension board's External Affairs Committee issued a resolution in November 2011 to the effect that the leased workers "would be in a control group and would remain as members of the plan." Though directly employed by CCSI, the leased employees (1) performed substantially similar duties as they had when employed directly by the City; (2) operated in the same governmental facilities; (3) were subject to removal from their positions at the City's request; and (4) were compensated using funds furnished by the publicly-funded local government corporation, which was contractually obligated to reimburse CCSI for the employees' services on a dollar-for-dollar basis.

With the exception of a group of City employees who were within a few years of retiring, the City proceeded to transfer convention and entertainment services and employees in accordance with

6

the transition plan. When the transfer of personnel had been consummated, three CCSI employees—John Klumb, Veronica McClelland, and Vivian Montejano—sought full retirement benefits from HMEPS on the basis that their employment with the City had ended when they became CCSI employees and, at that time, they were otherwise eligible to retire. *See id.* §§ 1(22) (defining "retiree"), (1)(24) (defining "separation from service"), 10(b) (eligibility requirements for retirement benefits); July 2011 Amended & Restated Meet & Confer Agreement Between HEMPS and the City § 14 (July 2011 MCA) (eligibility for retirement pension). Three other CCSI employees—John Gonzalez, Anita Robles, and Charmaine Pilgrim—claimed that, although not yet eligible to retire, they were no longer employed by the City and were therefore entitled to defer retirement status and cease having HMEPS contributions of 5% deducted from their salaries. *See* TEX. REV. CIV. STAT. ANN. ART. 6243h, §§ 8(a) (requiring employer to deduct pension-fund contributions from members' salaries during employment), 12 (deferred-retirement option); July 2011 MCA § 8. Based on the pension board's interpretation of the term "employee" in Article 6243h, as adopted in the revised pension-plan documents, the External Affairs Committee concluded that the transferred employees remained "employees," and thus "members" of the pension system, and that no separation from municipal service had occurred.

Klumb, McClelland, Montejano, Gonzalez, Robles, and Pilgrim (collectively, the Petitioners) sued HMEPS, alleging violations of the Texas Constitution and breach of contract. The Petitioners sought monetary damages and a declaration that they were no longer City employees as that term is defined in Article 6243h. In a plea to the jurisdiction, HMEPS argued that the trial court lacked subject-matter jurisdiction because (1) Article 6243h precludes judicial review of the pension

board's decisions interpreting that statute and determining eligibility for membership and benefits and (2) sovereign immunity bars the Petitioners' breach-of-contract and constitutional claims.

Petitioners responded by amending their petition to assert *ultra vires*, equal-protection, and due-course-of-law claims against the five pension-board members (Trustees) who voted to amend the HMEPS pension-plan documents to "illegally change the definition of 'employee' contained in Section 1(11) of Article 6243h." The Petitioners requested declaratory relief and an injunction against the Trustees based on the following alleged *ultra vires* acts: (1) voting to approve a definition of the term "employee" that improperly alters the statutory definition of that term; (2) compounding that unauthorized act by adopting the October 2011 resolution, which did the same; (3) authorizing the External Affairs Committee to determine who qualifies as an "employee" in contravention of a written agreement with the City; (4) construing Article 6243h in a manner inconsistent with section 401 of the IRC; (5) refusing a non-discretionary duty to pay Klumb, McClelland, and Montejano their retirement benefits following separation of service from the City; and (6) refusing a non-discretionary duty to recognize Gonzalez, Robles, and Pilgrim's separation from service with the City. According to the Petitioners, the pension board's supplemental definition of the term "employee" effected an amendment of the statute, which was neither approved by the City nor adopted in accordance with statutorily mandated procedures and historical practice (what the parties refer to as "meet-and-confer agreements" between HMEPS and the City). *See id.* § 3(n) (authorizing the pension board, "[n]otwithstanding any other law," to "enter into a written agreement with the city regarding pension issues and benefits" that is binding on the City and HMEPS members if approved under procedures specified in the statute). The Petitioners further asserted the pension

8

board had improperly delegated authority to the External Affairs Committee in violation of an existing meet-and-confer agreement, which states that, except for personnel decisions "no committee [of the pension fund] shall have authority to make final approvals, but shall only make recommendations to the full board."

The City intervened, generally aligning itself with the Petitioners and seeking similar injunctive and declaratory relief.

HMEPS and the Trustees (collectively, HMEPS) filed an amended plea to the jurisdiction, arguing that both the pension board's interpretation of the term "employee" and its application to the factual circumstances presented were "final and binding" with no right of judicial review. *See id.* § 2(x)-(y); *Ferrell*, 248 S.W.3d at 158-59. HMEPS further asserted sovereign immunity bars the Petitioners' breach-of-contract and constitutional claims because (1) violation of a meet-and-confer agreement cannot serve as a basis for an *ultra vires* claim and (2) the constitutional claims are facially invalid. Following a hearing, the trial court granted the plea to the jurisdiction and dismissed the suit for want of jurisdiction.

The court of appeals affirmed, holding that (1) Texas courts have jurisdiction to determine whether the pension board's actions are *ultra vires*; (2) the pension board's construction of the term "employee" was not an *ultra vires* act because it was consistent with the board's exclusive authority to interpret–and supply any omission in—the statute; (3) violation of a meet-and-confer agreement does not support an *ultra vires* claim; (4) the trial court lacks subject-matter jurisdiction to determine whether the board's supplemental definition of "employee" disqualifies the pension plan under the IRC; (5) the Petitioners' equal-protection challenge is meritless because preservation of funding

9

sources for the pension fund provides a rational basis for continuing to treat the transferred employees as employees of the City; (6) the petitioner's due-course-of-law claim fails because the employees lack a vested property interest in the retirement benefits at issue and the funds deducted from their salaries as contributions to the pension fund; and (7) the trial court did not err in striking and refusing to consider an affidavit offered to establish the board's intent to amend, rather than interpret, the statute and, in any event, the exclusion of the evidence was harmless. 405 S.W.3d at 215-27.

On appeal to this Court, the Petitioners and the City raise essentially the same grounds for denying HMEPS's plea to the jurisdiction. In the alternative, they assert that the evidence raises a fact issue concerning the existence of jurisdiction that must be resolved by the trier of fact on remand to the trial court.[2]

## II. Discussion

### A. Standard of Review

Subject-matter jurisdiction is essential to the court's power to decide a case. *Tex. Dep't. of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). The existence of subject-matter jurisdiction is a question of law that can be challenged, as it was here, by a plea to the jurisdiction. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). We review de novo the trial

---

[2] Relatedly, the Petitioners and the City complain that the court of appeals erroneously affirmed the exclusion of affidavit evidence pertaining to the Trustees' subjective intent to amend the definition of "employee." With respect to the *ultra vires* claims, the threshold jurisdictional issue boils down to whether the pension board articulated an interpretation of a statutory term or altered it. This is a matter of statutory construction, which is determined as a matter of law considering the statute's plain language. *See, e.g.*, *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006). Consequently, evidence of the Trustees' subjective intent is irrelevant.

court's disposition of HMEPS's plea to the jurisdiction. *Miranda*, 133 S.W.3d at 226.

In doing so, we consider the pleadings and factual assertions, as well as any evidence in the record that is relevant to the jurisdictional issue. *City of Elsa v. Gonzalez*, 325 S.W.3d 622, 625 (Tex. 2010). Construing the pleadings liberally in favor of the plaintiffs, we look to the pleaders' intent and determine whether the pleaders have alleged facts affirmatively demonstrating the court's jurisdiction to entertain the matter. *Id.* When a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider whether evidence in the record raises a fact issue, and if it does, the jurisdictional issue must be resolved by the trier of fact. *Miranda*, 133 S.W.3d at 227-28. Conversely, the trial court must rule on the plea as a matter of law if the evidence is undisputed or fails to raise a fact question. *Id.* at 228.

The jurisdictional issue in this case has two aspects. The first is whether courts have authority to review the pension board's actions under an *ultra vires* theory notwithstanding Article 6243h's ban on judicial review. The second is whether sovereign immunity bars the Petitioners' constitutional claims.

### B. *Ultra Vires* Claims

The pension board has broad authority to interpret and apply Article 6243h, to supplement omissions in its terms, to adopt written rules and guidelines for the fund's administration, and to determine all questions of law and fact pertaining to the same. *See* TEX. REV. CIV. STAT. ANN. ART. 6243h, § (2)(x). The board's actions with respect to these matters are "final and binding," *id.* § 2(y), and therefore not amenable to judicial review, *see Ferrell*, 248 S.W.3d at 158-59 (holding that Article 6243h's "final and binding" language precludes judicial review of the pension board's

decision denying police officers service credit for time they spent training as cadets in the Houston Police Academy). Neither the Petitioners nor the City disputes the validity of the foregoing principles.

Rather, they assert those principles simply do not apply when the pension board fundamentally alters the terms of the statute without the City's consent. When viewed in this way, they contend the jurisdictional inquiry is not determined by reference to *Ferrell*, but instead is controlled by *City of El Paso v. Heinrich,* in which we held that sovereign immunity does not prohibit *ultra vires* suits seeking "to require state officials to comply with statutory or constitutional provisions." 284 S.W.3d 366, 372 (Tex. 2009).

Sovereign immunity and the unavailability of judicial review are related, but conceptually distinct concepts. The former serves the pragmatic purpose of "shield[ing] the public from the costs and consequences of improvident actions of their governments." *Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006). The latter effectuates a legislative prerogative to protect the inviolability of an administrative process while simultaneously recognizing that suits challenging an administrative action necessarily implicate sovereign immunity. Whatever functional differences might exist between these concepts, we will assume for purposes of our analysis that the *ultra vires* doctrine is an exception to Article 6243h's ban on judicial review. *See Ferrell*, 248 S.W.3d at 160 (Brister, J., concurring) (acknowledging that Article 6243h forecloses judicial review of claims that the pension board misinterpreted the statute but observing that "[a] different case might be presented if the plaintiffs alleged the board was clearly violating some provision of the statute").

As stated in *Heinrich*, the *ultra vires* doctrine applies when a government official's conduct

12

is "without legal or statutory authority." 284 S.W.3d at 372. To trigger the *ultra vires* exception to sovereign immunity, "a suit must not complain of a government officer's exercise of discretion, but rather must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act." *Id*. In the present case, the Petitioners and the City allege both categories of *ultra vires* acts. The threshold issue, however, is whether the pension board acted without legal authority by expanding Article 6243h's definition of "employee" without the City's approval and in conflict with the plain language of the statute.[3] With the exception of the allegation that the pension board unlawfully delegated decision-making authority to a committee, the validity of the remaining *ultra vires* claims depends on the resolution of this issue. We thus begin our analysis there.

### 1. The Board's Construction of the Term "Employee"

Article 6243h defines the term "employee" as "any [eligible] person . . . (A) who holds a municipal position . . . ; (B) whose name appears on a regular full-time payroll of a city . . . ; and (C) who is paid a regular salary for services." TEX. REV. CIV. STAT. ANN. ART. 6243h, § 1(11). The constituent terms "municipal position," "a regular full-time payroll of a city," and "regular salary for

---

[3] The Petitioners and the City also allege that the pension board's definition of "employee" is *ultra vires* because it does not comply with section 401(a) of the Internal Revenue Code (IRC), as required by section 2(x)(2) of Article 6243h. *See* TEX. REV. CIV. STAT. ANN. ART. 6243h, § 2(x)(2). This argument, which derives support largely from their interpretation of a notice of "proposed rulemaking" the Internal Revenue Service (IRS) issued in November 2011, merits little analysis. *See* 76 FR 69172–01, 69173 & 69184-86 (2011) (stating that key components of the term "governmental plan" in section 414(d) of the IRC are undefined, observing that no regulations interpreting that provision exist, and proposing a "facts and circumstances" balancing test to define an entity's status as an "agency or instrumentality of a State or political subdivision of a State" for purposes of that section). To date the proposed regulations and interpretive guidance have not been adopted by the IRS. Even assuming the Petitioners and the City have correctly interpreted the "proposed rulemaking," an *ultra vires* claim cannot be premised on an alleged conflict with a regulatory scheme that has never been enacted.

services" are not defined. HMEPS therefore maintains that it has the authority to interpret these terms and fill in the interstices of the statute to address newly emerging circumstances affecting the administration of the statute "for the greatest benefit of all members." *See id.* § 2(x)(2), (3). Moreover, because the statute expressly authorizes the pension board to adopt written rules and guidelines for the administration of the pension fund, HMEPS contends the board had discretion to adopt supplemental language adding contours to the statutory definition and to amend the pension-plan documents accordingly. *See id.* § 2(x)(1).

The Petitioners and the City's contrary position is that no interpretation was required or permitted because, manifestly, personnel employed by CCSI are neither holding municipal positions nor being carried on the City's payroll. Accordingly, they contend that to reach these employees, the Trustees effectively amended and expanded the statutory definition and did so without entering into a section 3(n) meet-and-confer agreement with the City. *See id.* § 3(n) ("Notwithstanding any other law, the pension board may enter into a written agreement with the city regarding pension issues and benefits. The agreement must be approved by the pension board and the governing body and signed by the mayor and by the pension board or the pension board's designee.").

The breadth of the pension board's authority under Article 6243h is inescapable. As it pertains to the matter at hand, the statute expressly authorizes the pension board to construe the statute, add language it deems necessary for the administration of the pension fund, and determine all eligibility questions and all other legal and factual matters pertaining to the fund's administration. Courts may not review the board's actions in doing so absent a manifest conflict with express statutory terms. That is not the case here because (1) the definition of "employee" is composed of

14

essential terms that are undefined and (2) the supplemental language the board adopted neither inherently nor patently conflicts with the terms of the statute.[4] We therefore conclude that, as a matter of law, the pension board did not act without legal authority in interpreting the term "employee" to include "a full-time employee of a Texas local government corporation . . . controlled by the City, upon a determination by the External Affairs Committee of the Board of Trustees that such [local government corporation]'s employees are Employees for purposes of the [HMEPS] Plan." The board's additional explication of the definition as including "employees of any entity controlled, directly or indirectly, by [the City]" is also well within the board's discretionary authority. Absent a conspicuous and irreconcilable conflict, any further consideration of the matter would impermissibly encroach on the unreviewable, discretionary authority afforded to the board under Article 6243h.[5] *See Ferrell*, 248 S.W.3d at 158–59 (holding that courts lack jurisdiction to require pension board to comply with a judicial interpretation of Article 6243h).

Furthermore, there is no requirement that the pension board obtain the City's consent to

---

[4] By way of example, the Petitioners complain about the board's definition of employee to the extent it includes "a full-time employee of a Texas local government corporation . . . controlled by the City" and "employees of any entity controlled, directly or indirectly" by the City. That definition is not inherently inconsistent with the common understanding of the term "employee" as one who "works in the service of another person (the employer) under an express or implied contract of hire, under which the employer has the right to control the details of work performance." BLACK'S LAW DICTIONARY 639 (10th ed. 2014). Thus, reading the terms that comprise the statutory definition of "employee" through the control prism articulated by the board does not so clearly conflict with the statute as to be *ultra vires*.

[5] Although we are precluded from opining on the accuracy or reasonableness vel non of the pension board's interpretation of the statute, we observe parenthetically that the statute provides a list of ineligible employees to whom the term "employee" might otherwise apply and, in doing so, suggests that the term is amenable to more precise articulation. *See* TEX. REV. CIV. STAT. ANN. ART. 6243h, § 4. The City has also acknowledged that terms used in the statute may be susceptible to more than one meaning and that the board has discretion to determine the meaning of those words. In multiple "meet and confer" agreements, the City agreed that all words used in those agreements, which included the word "employee," would have the same meaning provided in Article 6243h "as determined by the Board" unless specially defined in the agreement.

15

exercise its discretionary powers. Section 3(n) of the statute authorizes, but does not require, the pension board to enter into a written agreement with the City regarding pension and benefit issues. *See* TEX. REV. CIV. STAT. ANN. ART. 6243h, § 3(n) ("[T]he pension board *may* enter into a written agreement with the city regarding pension issues and benefits." (emphasis added)). Section 3(n) does not purport to constrain the board's authority under section 2(x); it merely provides an alternative mechanism for the board to resolve pension issues. When the pension board and the City agree on a pension issue, the statute allows them to execute an enforceable contract to that effect. When they cannot agree, the statute makes the board's determinations of fact and statutory interpretations "final and binding." *See id.* § 2(y).

Although the pension board has unquestionably broad discretionary authority under section 2(x), we caution that the board may not violate the statute. Though we need not consider the matter here, we do not foreclose the possibility that, in appropriate circumstances, a particular interpretation of the statute could be *ultra vires*. We observe only the absence of such circumstances here, leaving any further dispute regarding the matter to the Legislature, as it evidently intended.[6] *See Ferrell*, 248 S.W.3d at 160 (Brister, J., concurring) (noting, "Our legislators [have] decided they wish to be the final (and frequent) arbiter of disputes about how these pension systems should be run"; consequently, the courts "must leave them to it, as the Texas Constitution expressly allows the Legislature to grant jurisdiction to administrative bodies rather than the courts").

---

[6] Another remedy available to aggrieved parties is using the elective process to alter HMEPS's governing body. *See* TEX. REV. CIV. STAT. ANN. ART. 6243h, § 2(c)-(d); July 2011 MCA § 4.

## 2. Delegation of Board Authority to a Committee

The Petitioners and the City also contend the pension board acted *ultra vires* by delegating decision-making authority to the External Affairs Committee in violation of the following provision in a July 2011 meet-and-confer agreement between HMEPS and the City:

> Except for meet and confer decisions and personnel decisions, no committee shall have authority to make final approvals, but shall only make recommendations to the full board.

The pension board's October 2011 resolution nevertheless states that "employees of an entity controlled, directly or indirectly, by the City are considered Employees for purposes of membership in [the Pension Fund], unless the External Affairs Committee expressly determines otherwise; provided, however that nothing in this resolution would apply to . . . any otherwise ineligible employee as determined by the External Affairs Committee."

Article 6243h generally permits delegation. *See* TEX. REV. CIV. STAT. ANN. ART. 6243h, § 3(k) ("The pension board may allocate among the trustees the responsibilities of the pension board under this Act and may designate any person who is not a trustee . . . to carry out the responsibilities of the pension board."). Under section 3(k) of the statute, the pension board is permitted to delegate decision-making authority in the manner effectuated by the October 2011 resolution.

The Petitioners and the City contend, however, that the July 2011 meet-and-confer agreement amended the statute and divested the pension board of the power to delegate final decision-making authority to a committee, requiring instead that committees "shall only make recommendations to the full Board." The Petitioners and the City allege that the October 2011 resolution thus violates

17

the terms of the meet-and-confer agreement and is *ultra vires*. We disagree.

Meet-and-confer agreements are written contracts, and regardless of whether the parties deem the provisions of the contract to be an "amendment" of the statute, noncompliance with a contract does not give rise to an *ultra vires* claim. *See City of Houston v. Williams*, 353 S.W.3d 128, 149 (Tex. 2011); *Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855-57 (Tex. 2002). Therefore, any claim that the pension board violated the July 2011 meet-and-confer agreement is a breach-of-contract claim that cannot be maintained absent a waiver of sovereign immunity. As we have previously explained, "declaratory-judgment suits against state officials seeking to establish a contract's validity, to enforce performance under a contract, or to impose contractual liabilities are suits against the State. . . . Consequently, such suits cannot be maintained without legislative permission." *IT-Davy*, 74 S.W.3d at 855-56. No waiver of immunity is alleged or supported on the record before the Court.[7]

### C. Equal Protection and Due Course of Law

In addition to asserting *ultra vires* claims as a basis for subject-matter jurisdiction, the Petitioners further contend that sovereign immunity does not bar relief on their claims under the Texas Constitution. *See, e.g.*, *Tex. Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 621 (Tex. 2011) (suits to require state officials to comply with constitutional provisions are not prohibited by sovereign immunity); *see also* TEX. CONST. ART. I §§ 3 (equal-protection clause), 19 (due-course-of-law clause). While it is true that sovereign immunity does not bar a suit to vindicate constitutional

---

[7] Although the Legislature has waived a local governmental entity's sovereign immunity to suit for contracts for goods or services, the waiver does not apply here because the meet-and-confer agreement is not a contract for goods or services. *See Zachry Constr. Corp. v. Port of Houston Auth. of Harris Cnty*, 449 S.W.3d 98, 106 (Tex. 2014).

18

rights, *Heinrich*, 284 S.W.3d at 372, immunity from suit is not waived if the constitutional claims are facially invalid, *see Andrade v. NAACP of Austin*, 345 S.W.3d 1, 11 (Tex. 2011).

### 1. Equal Protection

The Petitioners allege the pension board treated them differently than former city employees who now work for separate legal entities due to municipal outsourcing. For example, the Petitioners argue the City employees working at the Houston Zoo became employees of Houston Zoo, Inc., and that the pension fund determined a separation of service occurred as a result. According to the Petitioners, the zoo employees were declassified as "employees" and pension-system "members" and some were thereafter permitted to collect their pension benefits while remaining employed in essentially the same jobs. The Petitioners contend they are similarly situated to the zoo employees but are being treated differently. They further assert—as they must to state a valid equal-protection claim—that the pension board's disparate determination that CCSI employees remain members of the pension system is not rationally related to any legitimate governmental objective.

The Texas Constitution provides that all people "have equal rights, and no man, or set of men, is entitled to exclusive separate public emoluments, or privileges." TEX. CONST. ART. 1 § 3. The Petitioners contend the pension board's determination that they remain members of HMEPS violated their right to equal protection of the law. To state a viable equal-protection claim under the Texas Constitution, the Petitioners must show they have been "treated differently from others similarly situated." *Tex. Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 647 (Tex. 2004). Because neither a suspect classification nor a fundamental right is involved, the Petitioners must further demonstrate that the challenged decision is not rationally related to a legitimate governmental

19

purpose. *First Am. Title Ins. Co. v. Combs*, 258 S.W.3d 627, 639 (Tex. 2008). In conducting a rational-basis review, we consider whether the challenged action has a rational basis and whether use of the challenged classification would reasonably promote that purpose. *Id.* These determinations are "not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data." *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993).[8]

Even assuming the pension board has in fact treated similarly situated employees differently, we hold the Petitioners failed to plead a viable equal-protection claim because the board's actions are rationally related to at least two legitimate government objectives which are promoted by the challenged classification. First, the pension board has a legitimate interest in preserving sources of pension funding that are adequate to meet the demands on the fund, which it may rationally accomplish by ensuring the City meets its contribution obligations to the pension system. *See* 405 S.W.3d at 225 (citing *U.S. R.R. Ret. Bd. v. Fritz*, 449 U.S. 166, 174 (1980), which recognizes preservation of pension funds as a legitimate basis for distinguishing among pensioners). Continued depletion of the workforce through nominal privatization of municipal services would undoubtedly restrict or significantly impair the pension system's funding sources. The preservation of funding sources is a legitimate and rational basis for concluding that, under the circumstances presented here, convention department workers performing municipal functions as CCSI employees remain

---

[8] Federal equal-protection cases are instructive with regard to equal-protection challenges under the Texas Constitution. *See First Am. Title Ins. Co. v. Combs*, 258 S.W.3d 627, 638 (Tex. 2008).

members of the pension system.[9] Given the long-term ramifications of concerted efforts to reduce the City's contributions to the pension fund, any previous failure of the pension board to perceive or acknowledge a threat to pension-funding sources does not change the analysis of this issue. *Cf. McDonald v. Bd. of Election Comm'rs of Chicago*, 394 U.S. 802, 808 (1969) ("[A] legislature traditionally has been allowed to take reform 'one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind[]'; and a legislature need not run the risk of losing an entire remedial scheme simply because it failed, through inadvertence or otherwise, to cover every evil that might conceivably have been attacked." (internal citation omitted)).

The pension board also has a legitimate interest in policies that lessen the risk of overpaying pensioners or allowing them to "double dip." *See, e.g*, *Connolly v. McCall*, 254 F.3d 36, 43 (2d Cir. 2001) (per curiam) (recognizing "legitimate interest in saving money by barring pension practices that have the character of 'double-dipping'"). In this case, the pension board has disallowed functional City employees from collecting government-funded HMEPS retirement benefits while also receiving salaries and 401(k) contributions originating in the dollar-for-dollar expense reimbursements CCSI collects from Houston First, the City controlled and tax-funded local government corporation. The pension board's decision to eliminate further demands on the public fisc is rationally related to its interest in preventing employment arrangements that permit forms of

---

[9] Petitioners contend that "the refusal to pay earned pensions to eligible former employees or insisting that former employees pay into a pension fund on which they cannot claim a pension cannot be rationally related to preserving a pension fund which has as its purpose to provide pensions for eligible former employees." This argument presupposes eligibility and separation from service, which are matters reserved to the board's exclusive determination. It is also based on a faulty premise. The pension fund does not have a singular purpose of paying benefits as each member becomes eligible; rather, its principal purpose is to administer the fund for the greatest benefit of all members. That purpose is imperiled if the work force becomes insufficient to subsidize the pension fund for current or future retirees.

"double dipping."

Because we conclude that any differentiation between employees is rationally related to legitimate governmental objectives, the Petitioners' equal-protection claims fail as a matter of law.

### 2. Due Course of Law

In their remaining claims, the Petitioners contend they have been deprived of vested property rights without due process. *See* TEX. CONST. ART I § 19; *see also Univ. of Tex. Med. Sch. v. Than*, 901 S.W.2d 926, 929 (Tex. 1995) (no meaningful distinction exists between the terms "due process" and "due course of law"). Klumb, McClelland, and Montejano allege HMEPS unconstitutionally denied them retirement benefits they would otherwise have been eligible to collect after a separation of service from the City. Gonzalez, Robles, and Pilgrim were not eligible for retirement at the time they became CCSI employees, but they claim a vested property right in funds deducted from their salaries and contributed to the pension fund on their behalf.

The Texas Constitution provides that "[n]o citizen of this State shall be deprived of life, liberty, property, or privileges or immunities . . . except by the due course of the law of the land." TEX. CONST. ART. I, § 19. Before any substantive or procedural due-process rights attach, however, the Petitioners must have a liberty or property interest that is entitled to constitutional protection. *Than*, 901 S.W.2d at 929. A constitutionally protected right must be a vested right, which is "'something more than a mere expectancy based upon an anticipated continuance of an existing law.'" *City of Dallas v. Trammell*, 101 S.W.2d 1009, 1014 (Tex. 1937) (quoting *Dodge v. Bd. of Educ. of City of Chicago*, 5 N.E.2d 84, 86 (Ill. 1936)). The court of appeals held, and we agree, that the Petitioners' due-course claims are facially invalid because the Petitioners have no vested property

22

right to the pension-plan contributions and future retirement benefits at issue. 405 S.W.3d at 226-27.

Our decision in the *City of Dallas v. Trammell* is dispositive of the Petitioners' claims to a vested property interest in retirement benefits as of the date they otherwise became eligible but for the pension board's articulated and applied definition of the term "employee" in Article 6243h. In *Trammell*, we considered the constitutionality of a statutory amendment that effected a substantial reduction in the monthly pension benefits payable to a police-department retiree. *Id.* at 1009. The purpose of the contested enactment was to rectify inadequacies in pension-plan funding that threatened the plan's long-term solvency. *Id.* at 1010, 1015-16. In challenging the statutory amendment, the retiree asserted that he had a vested property right in the amount of the monthly pension benefit that was granted to him on the date of his retirement and that any subsequent reduction of that amount was unconstitutional. *Id.* The question presented was whether, as of the date of retirement, a pensioner has a vested right in future installment payments that could not be altered by subsequent legislative action. *Id.* at 1011.

In analyzing the issue, we adopted

the rule that the right of a pensioner to receive monthly payments from the pension fund after retirement from service, or after his right to participate in the fund has accrued, is predicated upon the anticipated continuance of existing laws, and is subordinate to the right of the Legislature to abolish the pension system, or diminish the accrued benefits of pensions thereunder . . . .

*Id.* at 1013. Applying this rule, we said there is no vested interest in future pension installments that would preclude the Legislature from repealing or modifying the law on which the pension system is founded, even if doing so would adversely impact or even abolish the right to future payment of unaccrued benefits. *Id.* at 1012, 1014; *see also id.* 1013-15. Stated another way, the right to receive

benefits under a pension fund "is made subject to the reserved power of the Legislature to amend, modify, or repeal the law upon which the pension system is erected, and this necessarily constitutes a qualification upon the anticipated pension and a reserved right to terminate or diminish it." *Id.* at 1014. We concluded *Trammell* with "a direct holding that as to future installments of a pension the pensioner has no vested right," *id.* at 1017, and we have since affirmed *Trammell*'s root analysis on several occasions. *See Ex Parte Abell*, 613 S.W.2d 255, 261-62 (Tex. 1981); *Bd. of Managers of Harris Cnty. Hosp. Dist. v. Pension Bd.*, 449 S.W.2d 33, 37 (Tex. 1969); *Woods v. Reilly*, 218 S.W.2d 437, 441 (Tex. 1949).

Although *Trammell* is directly adverse to the Petitioners' claims, they question *Trammell*'s continued vitality based on a subsequent amendment to the Texas Constitution, citing article XVI, section 67 of the Texas Constitution and *City of Fort Worth v. Howerton*, 236 S.W.2d 615, 619 (Tex. 1951). According to the Petitioners, the cited authority negates legislative authority to abolish HMEPS because under section 67(c), if the Legislature were to abolish the pension system (as opposed to merely amending the statute), it would be required to pass a law authorizing the City to elect to establish a pension system for its municipal employees. *See* TEX. CONST. ART. XVI, § 67(c). Per *Howerton*, if the City so elected, any subsequently established pension fund would no longer be subject to legislative control. *See Howerton*, 236 S.W.2d at 619 (if city adopts a pension fund pursuant to constitutional authority, the Legislature is not authorized to change the plan without the city's consent).

Obviously, certain contingencies must occur before an interest could be said to be fixed and unalterable by the Legislature as contemplated in *Howerton*; the main ones being that the Legislature

would have to abolish the pension system and the City would have to elect to establish a pension fund. Perhaps the City would elect to do so if given the opportunity, but even if the City were to establish its own pension system, the Petitioners cite no limit on the City's authority to amend or abolish any such system. Thus, we are not persuaded the cited authority undermines *Trammell*'s core holding that no vested property right exists when a pension fund can be amended or abolished by the governing authority; it makes no difference whether the authority with the power to abolish the pension system is the Legislature or some other entity. The crux of *Trammell*'s analysis is that any right emanating from a mere expectancy is not vested, and the Petitioners have cited no authority elevating their interests in the pension fund beyond a mere expectancy to a constitutional guarantee. We therefore reject the distinction the Petitioners attempt to draw between *Trammell* and the circumstances presented here.[10]

Approaching the matter from a different angle, the Petitioners embrace *Trammell* to the extent it confirms that interests in pension benefits are fixed, and thus vested, when all contingencies to entitlement have occurred. The Petitioners contend that any contingencies to their entitlement to pension benefits were satisfied when they became eligible to retire, even though no separation from service occurred under Article 6243h, as interpreted by the pension board. *Trammell*, however, does not support the Petitioners' contention that their retirement interests became fixed at the time of their eligibility for retirement. In fact, *Trammell* does the opposite, expressly holding that the plaintiff,

_____

[10] A different scenario might be presented if article XVI, section 66 of the Texas Constitution were applicable. That constitutional provision, which was added by amendment in 2003, expressly protects benefits under certain retirement systems from being reduced or otherwise impaired. *See* TEX. CONST. ART. XVI, § 66. The guarantees afforded by section 66 are not implicated here because, by a three-to-one margin, City of Houston voters opted to exercise an exemption authorized by that amendment. *See id.* § 66(h).

25

who had already retired and had actually been receiving pension benefits, had no vested right in future installments of the same. Applying *Trammell*'s "direct holding," we conclude that Klumb, McClelland, and Montejano have no vested property right in the retirement benefits at issue.

With regard to the remaining constitutional claims, we observed in *Trammell* that "[i]t is well settled that the mere circumstance that a part of a pension fund is made up by deductions from the agreed compensation of employees does not in itself give the pensioner a vested right in the fund, and does not make it any less a public fund subject to the control of the Legislature." 101 S.W.2d at 1012-13. In *Devon v. City of San Antonio*, we relied on *Trammell* in declining to recognize an employee's claimed interest in contributions to a municipal pension fund even though those contributions had been withheld from his wages. We explained there that

> [t]he deductions withheld from [the employee's] wages and paid into the pension fund never belonged to him, but remained public money used for a public purpose. They were not first segregated from the public funds so as to become [the employee's] private property and then paid into the pension fund; rather the deductions were "set aside from one public fund and turned over to another" and are no less public money after the payment into the pension fund than before.

443 S.W.2d 598, 600 (Tex. App.—Waco 1969, writ ref'd) (quoting *Trammell*, 101 S.W.2d at 1013); *see also Jud v. City of San Antonio*, 313 S.W.2d 903, 905 (Tex. Civ. App.—Eastland 1958, writ ref'd) (overruling "appellant's contention that he has a vested right in contributions to the pension fund"). The same is true here. Accordingly, we conclude that Gonzalez, Robles, and Pilgrim lack a vested property right in their pension-fund contributions.

Because the Petitioners have no vested rights in the retirement benefits and pension-plan contributions at issue, we hold their pleadings conclusively negate the existence of subject-matter

26

jurisdiction over their constitutional claims.

### III. Conclusion

The Petitioners and the City failed to plead actionable *ultra vires* and constitutional claims against HMEPS and the Trustees. Subject-matter jurisdiction over those claims is therefore lacking as a matter of law. We therefore affirm the court of appeals' judgment.

_____
Eva M. Guzman
Justice

**OPINION DELIVERED**:  March 20, 2015