# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-17-00397-CV

**Whitney Brewster, Executive Director, Texas Department of Motor Vehicles;
and Jeremiah Kuntz, Director, Vehicle Titles and Registration,
Texas Department of Motor Vehicles, Appellants**

**v.**

**Auto Title Service and Marilyn E. Miiller, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT
### NO. D-1-GN-17-002025, HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This is an interlocutory appeal from the district court's order overruling a plea to the jurisdiction and granting injunctive relief in a case involving the access to and use of the statewide Registration and Title System (RTS) by a deputy tax assessor-collector. Appellees Auto Title Service and Marilyn E. Miiller (collectively, "ATS"), who were deputized by the Travis County tax assessor-collector's office to collect vehicle title and registration fees, sued Appellants, Whitney Brewster and Jeremiah Kuntz, Executive Director and Director, respectively, of the Texas Department of Motor Vehicles (collectively, "the DMV directors"), for declaratory and injunctive relief related to the DMV's suspension of ATS's access to the RTS. For the reasons explained below, we will reverse the district court's order and render judgment dismissing ATS's claims.

1

## Statutory and Regulatory Framework

The Texas Department of Motor Vehicles is the state agency responsible for issuing titles and registering motor vehicles in Texas as required by the Transportation Code. *See* Tex. Transp. Code §§ 501.001–.179 ("Certificate of Title Act"), 502.001–.492 ("Registration of Vehicles"). Local county tax assessor-collectors are statutorily authorized to accept the applications for and collect the taxes and fees associated with titling and registering motor vehicles in Texas. *See id.* §§ 501.023 (application for title), 502.040 (registration requirements). Local county tax assessor-collectors are also authorized to deputize private entities to process the applications and collect the taxes and fees on behalf of the government, while also collecting a fee for their work, but must do so in accordance with DMV rules. *See id.* § 520.0071 (authorizing county assessor-collectors to deputize private entities, but giving DMV regulatory authority over deputies).

To carry out their title-service duties, the local tax assessor-collectors lease from the DMV the equipment that provides access to the DMV's RTS, a statewide database containing the official records of vehicle ownership in Texas. *See id.* § 501.173(b) (official record); Tex. Dep't of Motor Vehicles, *TxDMV's Registration and Titling System Begins Technology Overhaul* (June 13, 2013) (explaining RTS). The RTS equipment allows users to access the database and issue motor-vehicle registration receipts, process title-transfers applications, and collect the taxes and fees associated with such transactions. Title-service deputies, such as ATS, generally pay the local assessor-collector for use of the leased RTS equipment.

Under recently adopted DMV rules, title-service deputies must sign, beginning January 1, 2017, a DMV-provided "addendum" that outlines the terms and conditions of deputies'

2

access to and use of the RTS and equipment. *See* 43 Tex. Admin. Code § 217.163(a), (k); *see also* 41 Tex. Reg. 5787 (2016) (adopting 43 Tex. Admin. Code § 217.163 in 2016). This same rule requires that any agreement between a deputy and a local assessor-collector incorporate the addendum by reference: "Any contract or agreement . . . between the county and the full service deputy that authorizes the full service deputy to provide registration and titling services in the county must specifically incorporate the addendum by reference . . . ." *See* 43 Tex. Admin. Code § 217.163(k). The DMV-mandated addendum stipulates that the RTS and all associated equipment is the sole property of the State of Texas and the DMV. Among other matters, by signing the addendum, the deputies agree to "cooperate with any investigation by law enforcement" and that the DMV "may suspend or terminate a [deputy's] access to RTS if the [deputy] is the subject of a criminal investigation involving a crime of moral turpitude" or "fails to materially comply with applicable statutes and regulations." If a deputy's access is suspended or terminated, the addendum allows the deputy to submit a written request for reinstatement to the DMV's executive director, but stipulates that the executive director's determination is final.

## Case Background

ATS has been deputized by the Travis County Tax Assessor-Collector since 2000 to provide the above-described title services to the public. Under the terms of its contract with Travis County, ATS pays Travis County to use the RTS equipment that the county leases from the DMV and, as required by the DMV rules, ATS signed an addendum outlining the terms and conditions of ATS's access to and use of the RTS in 2017.

In May 2017, the DMV notified Travis County and ATS by a letter from appellant

3

Jeremiah Kuntz, Director of the Vehicle Titles and Registration Division, that the DMV was suspending ATS's RTS access "due to a pending criminal investigation" by the Travis County District Attorney. The letter provided no additional information regarding the criminal investigation. Travis County confiscated all title-service materials and equipment the same day the DMV notified ATS that its access was suspended.[1]

The day after the suspension and confiscation of the RTS equipment, ATS sent a written request to DMV's Executive Director, appellant Whitney Brewster, requesting review of the suspension and reinstatement of its RTS access. Brewster requested additional information regarding the ATS matter from Travis County, which request tolled the executive director's 21-day deadline to make a final decision.[2] However, before Brewster made a final decision, ATS filed the underlying suit, seeking declaratory and injunctive relief regarding the DMV's decision to suspend its access to RTS. Because the Transportation Code does not provide for judicial review of ATS's suspension, ATS asserted in its pleadings that DMV violated its constitutional due-process rights by failing to give it proper notice and the opportunity to be heard in connection with the suspension of its RTS access. *See* Tex. Const. art. I, §§ 16, 19; *Bohannan v. Texas Bd. of Criminal Justice*, 942 S.W.2d 113, 118 (Tex. App.—Austin 1997, writ denied) ("Sovereign immunity does not prevent the assertion of a claim alleging that the state deprived the plaintiff of property without due

[1] The DMV had previously suspended ATS's access in November 2015 for a "pending criminal investigation," but restored access in May of 2016 after ATS filed a lawsuit that it later nonsuited. No criminal changes were filed related to the 2015 suspension.

[2] The "addendum" specifies that the ED "shall make a final determination on reinstatement within 21 calendar days from the date the request for reinstatement is received," but if the ED "requests additional information from the county tax assessor-collector," that 21-day deadline is tolled until the requested information is received.

process.")  ATS also asserted that the DMV directors' acts were ultra vires, precluding application of sovereign immunity and providing another path to judicial review.  *See City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009) (noting "that suits to require state officials to comply with statutory or constitutional provisions are not prohibited by sovereign immunity").

The DMV directors filed a plea to the jurisdiction arguing, among other points, that ATS's due-process claim was not viable, and thus barred by sovereign immunity, because ATS lacked a vested property or liberty interest on which to base the due-process claim.  *See Honors Acad., Inc. v. Texas Educ. Agency*, 555 S.W.3d 54, 67–68 (Tex. 2018) (rejecting due-process claim on sovereign-immunity grounds because of lack of vested interest or property right).  Relatedly, the DMV directors argued that ATS's ultra vires claims were invalid, and thus barred by sovereign immunity, because the directors had both the statutory and regulatory authority to suspend ATS's access to the RTS.  *See Heinrich*, 284 S.W.3d at 372 ("To fall within this ultra vires exception, a suit must not complain of a government officer's exercise of discretion, but rather must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act.").

After a hearing on the DMV directors' plea to the jurisdiction and on ATS's request for injunctive relief, the district court overruled the DMV directors' plea to the jurisdiction and granted a temporary injunction compelling the DMV to allow ATS access to the RTS.  It is from this order that the DMV directors now appeal.  *See* Tex. Gov't Code § 51.014(a) (authorizing certain interlocutory appeals).

5

**Discussion**

The DMV directors challenge the district court's order overruling their plea to the jurisdiction in two issues, arguing that sovereign immunity bars ATS's ultra vires claim because the DMV directors acted pursuant to statutory and regulatory authority when they suspended ATS's access to the RTS, and that sovereign immunity bars ATS's due-process claim because ATS lacks a vested liberty or property interest in access to the DMV's RTS. In a third issue, argued in the alternative, the DMV directors assert that the district court abused its discretion in granting the temporary injunction while a criminal investigation was pending.

**Plea to the jurisdiction**

Generally, "immunity from suit implicates courts' subject-matter jurisdiction." *Houston Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 160 (Tex. 2016) (quoting *Rusk State Hosp. v. Black*, 392 S.W.3d 88, 91 (Tex. 2012)). Thus, it "is properly asserted in a plea to the jurisdiction." *Id.* (quoting *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004)). As subject-matter jurisdiction is a question of law, we review a trial court's ruling on a plea to the jurisdiction de novo. *Id.* (citing *Klumb v. Houston Mun. Emps. Pension Sys.*, 458 S.W.3d 1, 8 (Tex. 2015)). "When a plea to the jurisdiction challenges the pleadings," as here, "we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause." *Id.* (quoting *Heinrich*, 284 S.W.3d at 378). In doing so, we construe the pleadings liberally in the pleaders' favor and look to their intent. *Id.* Only if the pleadings affirmatively negate jurisdiction should the plea to the jurisdiction be granted without affording the plaintiffs an opportunity to replead. *Id.* (citing *Miranda*, 133 S.W.3d at 227).

6

**ATS's ultra vires claim**

As noted above, ATS alleged in its pleadings that the DMV directors acted ultra vires—i.e., without legal authority—when they denied ATS access to the RTS database. In their plea to the jurisdiction and on appeal, the DMV directors assert that because ATS has not alleged facts that constitute actions that are beyond the DMV directors' statutory authority, sovereign immunity bars ATS's ultra vires claim. Specifically, the DMV directors contend that because they have the statutory and regulatory authority to suspend RTS access, their acts were not ultra vires. *See Heinrich*, 284 S.W.3d at 372 ("To fall within this ultra vires exception, a suit must not complain of a government officer's exercise of discretion, but rather must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act."); *see also Houston Belt*, 487 S.W.3d at 161–69 (considering official's statutory authority in review of sovereign-immunity based plea to jurisdiction). We agree.

The Legislature delegated broad authority to the DMV to make rules regarding the duties and obligations of deputies: "The board by rule shall prescribe . . . the duties and obligations of deputies . . . ." Tex. Transp. Code § 520.0071(a)(2). Pursuant to this authority, the DMV implemented rules for all deputies, including rules that delineate the limitations and responsibilities of having access to the State-owned RTS system that the DMV operates and maintains. *See* 43 Tex. Admin. Code § 217.163. Among other requirements, the DMV's rules specify that all deputies appointed by local authorities are subject to the DMV's rules, including the requirement that the deputies sign an addendum that "outlin[es] the terms and conditions of the full service deputy's access to and use of the [DMV]'s [RTS]." *See id.* § 217.163(k). As noted, the addendum specifies

that the DMV may suspend or terminate a deputy's RTS access if that deputy is the subject of a criminal investigation for a crime of moral turpitude. Such a criminal investigation of ATS (by the Travis County District Attorney) was the pleaded basis for the DMV's suspension of ATS's access. Stated another way, the DMV acted pursuant to their statutory and regulatory authority.

ATS contends that the DMV directors acted ultra vires in suspending ATS's access because the DMV directors have "admit[ted that they] had no evidence regarding the alleged 'pending criminal investigation,' much less evidence that ATS was the *subject* of such investigation or that the investigation was *for a crime of moral turpitude*." ATS's assertion here is based on the DMV directors' response to a purported public-information request from ATS—made after the hearing on the DMV's plea to the jurisdiction—for "all information upon which the [DMV] relied in deciding to summarily suspend [ATS]'s access." The DMV, in a letter to the Attorney General regarding ATS's request, asserted that it was not required to respond to ATS's request because the DMV's "awareness of the existence of an ongoing investigation [by the Travis County DA's office] does not, in and of itself, point to a particular governmental record or set of records" and that the "actual knowledge of what records might be responsive to such a request would exist only among those persons performing the investigation"—the Travis County DA. Stated another way, the DMV asserted that it did not have any records responsive to the request because any such documents would be held by the Travis County DA. In that same response, the DMV noted that even if ATS's request encompassed DMV records that were relevant to the DA's investigation, the DA's office had asked the DMV to assert a law-enforcement/pending-investigation exception regarding such records.

First, we note that ATS's pleadings do not allege that there was no pending criminal

8

investigation. Instead, ATS complained that the DMV had not specifically identified an investigation and had not provided ATS with any facts to support that there was an alleged pending criminal investigation. ATS did assert in its pleadings that it "believes there are no new [civil or criminal] allegations" against it, but it acknowledged that there had been a previous investigation and, again, it did not dispute that an investigation existed. The DMV directors were not obligated to refute an unmade allegation. We also note that the district court discussed these matters in camera with a representative of the Travis County District Attorney and the attorneys in this case. The district court described the discussion as "helpful discussion about things that are in the nature of pieces of information that the District Attorney's Office was permitted to disclose, and [the district court was "told that some of [its] questions could not be answered because they remain the subject of investigation or information that was not yet held out to be made public."

Regardless of ATS's pleadings, however, and assuming without deciding that we can consider the DMV's post-motion response to an open-records request, we disagree with ATS's characterization of that response as an "admission" that it had no evidence of a pending criminal investigation. The DMV's assertion that the DA, rather than the DMV, held documents evidencing the existence of an investigation is not an admission that there was no pending criminal investigation of ATS or that the DMV did not have proof of such a pending investigation.

We sustain the DMV directors' first issue.

**ATS's due-course-of-law claim**

In their second appellate issue, the DMV directors assert that the district court lacks jurisdiction over ATS's due-course-of-law claim because that claim is not viable because ATS's has

no property or liberty interest in access to the State's RTS. *See Honors Acad.*, 555 S.W.3d 54, 61–62 (rejecting due-process claim and affirming that it was proper to dismiss due-process claims for lack of jurisdiction where parties asserting due-process claim lacked vested interest in property right at issue). We agree.

The Texas Constitution provides that "[n]o citizen of this State shall be deprived of life, liberty, property, privileges or immunities . . . except by the due course of the law of the land." Tex. Const. art. I, § 19; *see* U.S. Const. amend. XIV, § 1 ("No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law. . . .").[3] Before any substantive or procedural due-process rights attach, however, the citizen must have a liberty or property interest that is entitled to constitutional protection. *Klumb*, 458 S.W.3d at 15. "Property interests . . . are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Roth*, 408 U.S. at 577. The "understandings" referenced in *Roth* include contracts or agreements between parties. *See id.* (noting that written contract with explicit tenure provision could be evidence of formal understanding that would support teacher's claim of entitlment to re-employment after one-year employment contract expired).

---

[3] Because the two are so similar, "we have traditionally followed contemporary federal due process interpretations of procedural due process issues." *University of Tex. Med. Sch. at Hous. v. Than*, 901 S.W.2d 926, 929 (Tex. 1995). And because the terms are generally interchangeable, we use the phrase "due process" here because the parties do. *See id.* (explaining that "due course" and "due process" are "without meaningful distinction").

ATS argues that it has a property interest in the RTS by virtue of its agreement with Travis County to lease the RTS equipment. *See id.* But even if that agreement does give ATS some vested interest in the state-owned RTS *equipment*, the relevant interest here is the right *to access and use* the RTS database, the official record of vehicle ownership in Texas. There is nothing in ATS's agreement with Travis County or in the addendum that gives it the unfettered right to access and use the database itself, and we decline to infer such a right under the circumstances presented here.

Further, even if the agreement or addendum did promise access, or even if we could infer such a promise, that interest could not be considered a vested interest considering the nature of RTS—i.e., a state-created and state-operated database that exists, at the State's discretion, to document vehicle ownership in Texas. The Legislature or the DMV could, at any time, decide to shut down the RTS or replace it. "To have a constitutionally protected property interest, a person must have a 'legitimate claim of entitlement' rather than a mere 'unilateral expectation.'" *Honors Acad.*, 555 S.W.3d at 61 (quoting *Board of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)). "[A] 'vested right' is 'something more than a mere expectancy based upon an anticipated continuance of an existing law.'" *Id.* (quoting *City of Dallas v. Trammell*, 101 S.W.2d 1009, 1014 (Tex. 1937)).

ATS also argues that it has a liberty interest at stake here, specifically, a liberty interest in a particular profession. In making this argument, ATS relies on the Texas Supreme Court's opinion in *The University of Texas Medical School v. Than*, 901 S.W.2d 926 (Tex. 1995), in which the court held that a medical student accused of academic dishonesty had a liberty interest in his graduate education that was, in turn, entitled to due-process protection. Here, ATS argues that

11

because ATS's access was suspended based on ATS being "the subject of a criminal investigation involving a crime of moral turpitude," it was entitled to due process. *See id.* at 929 ("[W]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, the minimal requirements of due process must be satisfied." (citing *Goss v. Lopez*, 419 U.S. 565, 574 (1975); *Roth*, 408 U.S. at 573). However, unlike *Than*, the source of the "name clouding" in this case is not the DMV, but rather the Travis County District Attorney. In other words, to the extent that ATS's "good name, reputation, honor, or integrity is at stake," it is not because the DMV suspended its RTS access, but because the District Attorney is conducting a criminal investigation involving ATS. Moreover, the DMV has no duty or authority to conduct a hearing that would resolve the District Attorney's criminal investigation.

We sustain the DMV directors' challenge to ATS's due-process claims.

**Temporary injunction**

Having sustained the DMV directors' first and second issues, we need not address their alternative third issue.

### Conclusion

Because sovereign immunity bars ATS's claims, we reverse the district court's denial of the DMV directors' plea to the jurisdiction and render judgment dismissing ATS's case for lack of jurisdiction.

_____
                               Jeff Rose, Chief Justice

Before Chief Justice Rose, Justices Goodwin and Field

Reversed and Dismissed

Filed:   December 20, 2018