# Supreme Court of Texas

---
No. 24-0237
---

Texas General Land Office and Dawn Buckingham, in her official capacity as the Texas Land Commissioner,

*Petitioners*,

v.

SaveRGV, Sierra Club, and Carrizo/Comecrudo Nation of Texas, Inc.,

*Respondents*

*~ and ~*

---
No. 24-0407
---

Cameron County,

*Petitioner*,

v.

SaveRGV, Sierra Club, and Carrizo/Comecrudo Nation of Texas, Inc.,

*Respondents*

*~ and ~*

No. 24-0457

Ken Paxton, in his official capacity as Attorney General of Texas,
*Petitioner*,

v.

SaveRGV, Sierra Club, and Carrizo/Comecrudo Nation of Texas, Inc.,
*Respondents*

On Petitions for Review from the
Court of Appeals for the Thirteenth District of Texas

**Argued March 5, 2026**

JUSTICE HUDDLE delivered the opinion of the Court.

In 1959, the Legislature declared by statute that Texans enjoy the "free and unrestricted right of ingress and egress to and from the state-owned beaches." Open Beaches Act, 56th Leg., 2d C.S., ch. 19, § 1, 1959 Tex. Gen. Laws 108, 108 (current version at TEX. NAT. RES. CODE § 61.011(a)). With this statute's passage, the notion that Texas beaches are the public's to enjoy became more deeply engrained in our culture. When the occasional dispute regarding the public's access to beaches arose, and protection of open beaches proved necessary, it was the State and local governments that shouldered the enforcement duty, with

relatively little need or opportunity for courts to define the statute's contours.

Fifty years after the statute's passage, in 2009, Texas voters enshrined the right of public beach access in our Constitution. The constitutional amendment granted the public a right, described as a permanent easement, to ingress, egress, and use of Texas beaches. TEX. CONST. art. I, § 33(b). But while the amendment constitutionalized the right to use state-owned beaches, it also specified what it was *not* creating. Subsection (d) provides that the new Article I, Section 33 "does not create a private right of enforcement." *Id.* § 33(d).

Since Section 33's adoption, the Legislature has enacted statutes that permit temporary closures of Boca Chica Beach in South Texas to safeguard the public from nearby rocket launches and related space flight activities. *See* TEX. NAT. RES. CODE §§ 61.011(d)(11), .132. This case presents two related questions arising out of those closures. First: are the closures (and the statutes authorizing them) constitutional given that they are in tension with Section 33's guarantee of an "unrestricted right to use and a right of ingress to and egress from" public beaches? TEX. CONST. art. I, § 33(b). Second: irrespective of the answer to that question, who has the authority to *enforce* Section 33?

No governmental actor seeks to enforce Section 33 in this case. Instead, the plaintiffs are private parties—organizations whose beachgoing members claim the temporary closures of Boca Chica Beach conflict with their constitutional right to access and use the beach. Without attempting to specify the extent to which their "unrestricted" right to beach use may give way to the State's countervailing interest in

3

protecting public safety—a task we leave for another day—we hold that subsection (d)'s express proviso that it creates no private right of enforcement bars these private plaintiffs' claims. Because the claims are not viable, it follows that the defendants, all of whom are governmental actors, retain their immunity from suit. The trial court was thus correct to dismiss the case for lack of jurisdiction. We reverse the court of appeals' contrary judgment and reinstate the trial court's judgment of dismissal.

## I. Background

Enacted in 1959, the Open Beaches Act declares as "the public policy of this state that the public, individually and collectively, shall have the free and unrestricted right of ingress and egress to and from the state-owned beaches bordering on the seaward shore of the Gulf of Mexico." TEX. NAT. RES. CODE § 61.011(a). As we noted in *Severance v. Patterson*, the Act strikes a careful balance between "preserv[ing] private property rights" on the one hand and "guard[ing] the right of the public to use public beaches against infringement by private interests" on the other. 370 S.W.3d 705, 719 (Tex. 2012).

To that end, the Act makes it unlawful "for any person to create, erect, or construct any obstruction, barrier, or restraint that will interfere with" the public's right to use and access public beaches. TEX. NAT. RES. CODE § 61.013(a). It further "provides the State with a means of enforcing" the statute's guarantees, *Severance*, 370 S.W.3d at 710, such as by charging governmental officials with the duty of filing "suit to . . . remove or prevent any improvement, maintenance, obstruction, barrier, or other encroachment on a public beach, or to prohibit any

4

unlawful restraint on the public's right of access to and use of a public beach," TEX. NAT. RES. CODE § 61.018(a).

In 2009, Texas voters enshrined the rights described in the Open Beaches Act in the Texas Constitution's Bill of Rights.[1] Article I, Section 33 states:

> (b) The public, individually and collectively, has an unrestricted right to use and a right of ingress to and egress from a public beach.[2] The right granted by this subsection is dedicated as a permanent easement in favor of the public.
>
> (c) The legislature may enact laws to protect the right of the public to access and use a public beach and to protect

---

[1] The Legislature proposed the constitutional amendment in the wake of weather events that shifted the line of vegetation and caused private structures to become located on the public beach. *See, e.g.*, H. Rsch. Org., Bill Analysis 2–3, Tex. H.J.R. 102, 81st Leg., R.S. (2009); H. Rsch. Org., Focus Report No. 81-8, at 22 (Aug. 20, 2009); Tex. Legis. Council, Analyses of Proposed Constitutional Amendments 50–51 (2009); *see also* TEX. NAT. RES. CODE § 61.001(5) (defining "Line of vegetation" as "the extreme seaward boundary of natural vegetation which spreads continuously inland"), (8) (defining "Public beach" with reference to the line of vegetation). *Severance*—the Court's seminal case on the Open Beaches Act—addressed whether such events caused the public easement to "roll" landward onto privately owned property. 370 S.W.3d at 721–27. But *Severance* did not address Section 33. *See id.* at 713 n.8.

[2] "Public beach" is defined as

> a state-owned beach bordering on the seaward shore of the Gulf of Mexico, extending from mean low tide to the landward boundary of state-owned submerged land, and any larger area extending from the line of mean low tide to the line of vegetation bordering on the Gulf of Mexico to which the public has acquired a right of use or easement to or over the area by prescription or dedication or has established and retained a right by virtue of continuous right in the public under Texas common law.

TEX. CONST. art. I, § 33(a).

the public beach easement from interference and encroachments.

(d) This section does not create a private right of enforcement.

TEX. CONST. art. I, § 33.

A few years later, Space Exploration Technologies Corp. (SpaceX) was reviewing potential sites for its new rocket launch facility. One such location was next to Boca Chica Beach in Cameron County. The Federal Aviation Administration, which licenses rocket launch sites, conditioned its approval of this site on SpaceX's ability to restrict public access to the launch area, including Boca Chica Beach. To facilitate this process, in 2013 the Legislature passed House Bill 2623, which amended the Open Beaches Act and authorized SpaceX to request Boca Chica Beach's closure on days SpaceX would be conducting space flight activities.[3]

Two provisions of HB 2623, now codified in the Natural Resources Code, are at issue in this case. First, plaintiffs assail the provision that permits the General Land Office (GLO)'s commissioner to promulgate rules on "the closure of beaches for space flight activities." TEX. NAT. RES. CODE § 61.011(d)(11). Second, plaintiffs challenge Section 61.132, which permits a county containing an FAA-approved launch site to

[3] *See* H. Rsch. Org., Bill Analysis 2, Tex. H.B. 2623, 83d Leg., R.S. (2013) (noting that Texas was competing with Florida, Georgia, and Puerto Rico to house the SpaceX facility), 3 ("[HB] 2623 is necessary for the location at Boca Chica Beach to be viable as a space launch site."); S. Rsch. Ctr., Bill Analysis 1, Tex. H.B. 2623, 83d Leg., R.S. (2013) ("[F]or safety reasons, areas within a certain radius of a launch site must be closed before a launch . . . ."). It was understood that HB 2623 would apply only to Cameron County as it was then—and still remains—the only coastal county in Texas containing an FAA-approved launch site. *See* TEX. NAT. RES. CODE § 61.132(a); H. Rsch. Org., Bill Analysis 1–2, Tex. H.B. 2623, 83d Leg., R.S. (2013).

6

temporarily close the beach when a space flight is scheduled. That section provides:

> To protect the public health, safety, and welfare, the commissioners court by order may temporarily close a beach in reasonable proximity to the launch site or access points to the beach in the county on a primary or backup launch date . . . .

*Id.* § 61.132(c).[4]

SaveRGV, a nonprofit environmental advocacy corporation, sued the GLO, its commissioner,[5] and Cameron County in 2021. According to SaveRGV's pleadings, Boca Chica Beach and State Highway 4—the beach's only access road—have been closed multiple times for SpaceX launches. SaveRGV alleges that the beach closures interfere with the beach-access rights of its members, who perform conservation work at Boca Chica Beach, enjoy the beach's wildlife, and otherwise use the beach for recreation. The lawsuit seeks several declarations, which are largely predicated on the theory that HB 2623 "irreconcilably conflicts" with Section 33 and is thus unconstitutional and void.

The Attorney General intervened to defend the statutes, and Sierra Club and Carrizo/Comecrudo Nation of Texas, Inc. (the Tribe) intervened as plaintiffs. Like SaveRGV, Sierra Club and the Tribe

---

[4] Section 61.132 requires GLO approval for beach closures on summer weekends and certain holidays, TEX. NAT. RES. CODE § 61.132(d), and requires compliance with the county's "beach access and use plan" and "dune protection plan" as adopted and certified under the Natural Resources Code, *id.* § 61.132(e).

[5] When SaveRGV sued, George P. Bush was the GLO's commissioner. Dawn Buckingham succeeded him in office and was automatically substituted in his place. *See* TEX. R. APP. P. 7.2(a).

7

allege that the beach closures deprive their members of their constitutionally protected right to access and use Boca Chica Beach.

The Attorney General, GLO and its commissioner, and Cameron County each filed a plea to the jurisdiction, asserting lack of standing and immunity. The Attorney General and GLO argued, among other things, that Section 33(d)'s express disclaimer that it "does not create a private right of enforcement" deprived plaintiffs of standing to sue. TEX. CONST. art. I, § 33(d). Cameron County asserted a similar argument but also framed it in terms of immunity. Plaintiffs[6] responded that courts have inherent jurisdiction to determine a statute's constitutionality and that the Uniform Declaratory Judgments Act (UDJA) expressly waives immunity for their claims. *See Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 552 (Tex. 2019) (explaining that the UDJA "provid[es] only a limited waiver" of immunity "for challenges to the validity of an ordinance or statute"); *see generally* TEX. CIV. PRAC. & REM. CODE §§ 37.001–.011.

The trial court conducted a hearing, granted all three pleas, and dismissed plaintiffs' claims with prejudice. The court of appeals reversed. 722 S.W.3d 433, 446 (Tex. App.—Corpus Christi–Edinburg 2024). The court first held that at least one plaintiff, Sierra Club, established standing as to all defendants. *Id.* at 442–44, 442 n.4. The court then rejected defendants' argument that plaintiffs failed to establish a waiver of immunity. *Id.* at 444–45. The court reasoned that it was unnecessary to first examine whether plaintiffs' claims were

---

[6] We refer to SaveRGV, Sierra Club, and the Tribe collectively as "plaintiffs."

viable because they challenge the constitutionality of a statute and not governmental actions. *Id.* at 445.

All defendants petitioned this Court for review. We granted the petitions and consolidated the cases for oral argument.

## II. Discussion

### A

Whether subject matter jurisdiction exists is a question of law we review de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004). A "plea to the jurisdiction can challenge the plaintiff's pleadings, the existence of jurisdictional facts, or both." *Busse v. S. Tex. Indep. Sch. Dist.*, ___ S.W.3d ___, 2026 WL 1279764, at *2 (Tex. May 8, 2026). When challenging the pleadings, we examine "whether the plaintiff pleaded facts that affirmatively demonstrate subject matter jurisdiction." *Id.* Only when the pleadings "affirmatively *negate* the existence of jurisdiction" will we grant a plea to the jurisdiction without allowing the plaintiff an opportunity to amend. *Miranda*, 133 S.W.3d at 227 (emphasis added). When a plea challenges jurisdictional facts, our standard of review mirrors summary judgment; we "consider relevant evidence in the record" to determine whether a fact issue exists regarding jurisdiction. *Jones v. Turner*, 646 S.W.3d 319, 325 (Tex. 2022).

In their pleas to the jurisdiction, defendants argued that plaintiffs lack standing. The court of appeals held that at least one plaintiff had established standing as to all defendants. *See* 722 S.W.3d at 442 n.4. We have explained that when one "valid jurisdictional obstacle" exists, "it is not necessary that *every other* potential jurisdictional defect be

9

raised, fleshed out, or resolved" by a reviewing court. *Rattray v. City of Brownsville*, 662 S.W.3d 860, 868 (Tex. 2023). As we explain below, our resolution of defendants' immunity challenge is dispositive here, so we need not also address standing.

Because sovereign or governmental immunity implicates subject matter jurisdiction, a governmental defendant may assert its immunity in a jurisdictional plea. *Matzen v. McLane*, 659 S.W.3d 381, 388 (Tex. 2021). To defeat an immunity challenge at the plea to the jurisdiction stage, the plaintiff must plead facts that "affirmatively demonstrate" a waiver or exception to immunity—otherwise, the plea must be granted. *Id.* at 388–89. Suits seeking to vindicate constitutional rights are often not barred by governmental immunity. *See State v. Zurawski*, 690 S.W.3d 644, 660–61 (Tex. 2024) (recognizing that the UDJA waives immunity for suits to declare a statute unconstitutional); *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009) (holding that suits to require governmental officials to comply with the Constitution are not barred by immunity). Nevertheless, "immunity from suit is not waived if the constitutional claims are facially invalid." *Klumb v. Hou. Mun. Emps. Pension Sys.*, 458 S.W.3d 1, 13 (Tex. 2015).

Defendants argue that the court of appeals erred in concluding their immunity was waived without first evaluating whether plaintiffs alleged facially valid constitutional claims. *See* 722 S.W.3d at 445. The court of appeals expressly declined to "determine the merits of [plaintiffs'] constitutional arguments at this stage of the proceeding." *Id.* In doing so, the court acknowledged this Court's decision in *Klumb* but distinguished it on the basis that the plaintiffs there challenged the

10

constitutionality of governmental *actions* rather than, as here, a statute. *See id.* (citing *Klumb*, 458 S.W.3d at 3–4). In essence, the court of appeals concluded it was unnecessary to evaluate the facial validity of plaintiffs' constitutional claims because they challenge a statute instead of merely alleging that the defendants acted ultra vires—i.e., outside the bounds of their lawful authority. *See, e.g.*, *Matzen*, 659 S.W.3d at 388.

We agree with defendants that the court of appeals erred in disregarding this critical analytical step. When, as here, a governmental defendant asserts that it is immune from a claim asserting a constitutional violation, *Klumb* requires courts to determine whether the claim is facially valid. In *Klumb*, the plaintiffs alleged that members of Houston's pension board acted ultra vires and unconstitutionally in restructuring contribution requirements for city employees. 458 S.W.3d at 7. The pension board and its members countered that sovereign immunity barred the plaintiffs' constitutional claims because those claims were "facially invalid." *Id.*

This Court agreed. First, it rejected the plaintiffs' equal-protection claims, stating that the claims "fail[ed] as a matter of law" because "the board's actions [we]re rationally related to at least two legitimate government objectives which [we]re promoted by the challenged classification." *Id.* at 14. Second, the Court rejected the plaintiffs' due-course challenge because a prior dispositive decision foreclosed the legal theory they pleaded. *See id.* at 15–17. The consequence of these holdings was that the plaintiffs "failed to plead actionable . . . constitutional claims," and thus subject matter jurisdiction over those claims was "lacking as a matter of law." *Id.* at

11

17. *Klumb* did not turn on whether the plaintiffs challenged a statute or conduct they alleged was ultra vires.

Since *Klumb*, this Court has undertaken the same analysis when a plaintiff challenges a statute as unconstitutional. In *Abbott v. Mexican American Legislative Caucus*, the plaintiffs challenged statutes that reapportioned legislative districts. 647 S.W.3d 681, 687–88 (Tex. 2022). The defendants asserted immunity in pleas to the jurisdiction, arguing that the plaintiffs failed to establish an immunity waiver because their constitutional claims were not "viable." *Id.* at 688.

We concluded immunity was waived as to one constitutional claim. *Id.* at 700. But we rejected another claim, explaining that the plaintiffs' reading of the constitutional provision at issue was not supported by its text, context, or case law. *Id.* at 701–03. This latter claim, we held, was "facially invalid and thus barred by sovereign immunity." *Id.* at 703.

More recently, in *State v. Zurawski*, we examined the validity of claims raising constitutional challenges to the Human Life Protection Act. *See* 690 S.W.3d at 661. At the outset, we reaffirmed that the UDJA does not waive immunity for any and all claims against the government. *Id.* at 660–61. Rather, we explained that "to obtain declaratory relief against the government, it is necessary to show that the challenged law is invalid because it is unconstitutional, preempted by superior governing law, or barred for some similar reason." *Id.* at 661.

We went on to examine whether the plaintiffs' allegations—that the Act violated the Texas Constitution's due-course and equal-protection guarantees—had merit. In doing so, we analyzed what those

12

who ratified the due-course clause in 1845 would have understood its language to mean. *Id.* at 666–67. We ultimately dismissed the due-course claim because the allegations did not demonstrate a viable constitutional challenge to the Act. *See id.* at 668–69. We also rejected the equal-protection challenge because the "record [did] not demonstrate that the Act lacks a rational relationship to a legitimate governmental purpose." *Id.* at 671.

The court of appeals in this case, however, distinguished *Klumb*—and determined no facial validity analysis was needed—because the plaintiffs in *Klumb* challenged governmental conduct, whereas plaintiffs here contend that the statutes codifying HB 2623 are themselves unconstitutional. *See* 722 S.W.3d at 445. Our recent cases demonstrate that this distinction does not hold up. Although the court of appeals did not have the benefit of *Zurawski*, many other cases embrace the principle we emphasize today: "immunity from suit is not waived if the constitutional claims are facially invalid." *Mexican Am. Legis. Caucus*, 647 S.W.3d at 698 (quoting *Klumb*, 458 S.W.3d at 13); *see also Matzen*, 659 S.W.3d at 394 (explaining that "when sovereign immunity is asserted," the plaintiff has the "burden to plead facts that affirmatively state a viable claim"); *Andrade v. NAACP of Aus.*, 345 S.W.3d 1, 11 (Tex. 2011) (stating that a governmental defendant "retains immunity from suit unless the [plaintiffs] have pleaded a viable claim"). Whether such claims are premised on allegedly unconstitutional governmental conduct or allegedly unconstitutional statutes is immaterial.

The court of appeals was thus obligated to determine whether plaintiffs' claims are facially valid. Although we could remand for the

13

court of appeals to evaluate facial validity, in the interest of judicial economy, we will exercise our discretion to address the question here. *See RSL Funding, LLC v. Newsome*, 569 S.W.3d 116, 124 (Tex. 2018) (citing TEX. R. APP. P. 53.4); *Pedernal Energy, LLC v. Bruington Eng'g, Ltd.*, 536 S.W.3d 487, 495 (Tex. 2017) ("The parties have briefed and argued the issue here, so in the interest of judicial economy we will address it rather than remanding to the court of appeals.").

**B**

We have described the task of addressing a constitutional claim's facial validity as a "jurisdictional inquiry [that] touches the merits." *Mexican Am. Legis. Caucus*, 647 S.W.3d at 699. And we have emphasized that courts undertaking this analysis should "go no further than necessary to determine jurisdiction," *id.*, and "address the 'merits' . . . only to the extent necessary to grant the opportunity to replead," *id.* at 700 n.9. *See also Matzen*, 659 S.W.3d at 394 ("[I]t is not the [defendant]'s burden to show that the plaintiff could *never* state a viable claim. Instead, it is the plaintiff's burden to plead facts that affirmatively state a viable claim." (emphasis added)).

Here, the viability of plaintiffs' challenge to HB 2623 is "intertwined with" our interpretation of the constitutional provision they invoke. *See Zurawski*, 690 S.W.3d at 661–62. So we examine Section 33 in accordance with our principles of constitutional interpretation to determine whether plaintiffs' constitutional claims are facially valid, which, in turn, determines whether defendants retain immunity from suit. *See Mexican Am. Legis. Caucus*, 647 S.W.3d at 698 (explaining that whether "constitutional claims are facially invalid and

14

thus barred by immunity . . . hinges on our interpretation of the provisions at issue").

When interpreting the Constitution, "our bottom-line task is to identify what the constitutional provision would have meant to those who ratified it." *Hogan v. S. Methodist Univ.*, 688 S.W.3d 852, 857 (Tex. 2024). We "rely heavily on the literal text," presume "the framers carefully chose the language," and "focus on the voters' contemporaneous understanding" to identify "what the voters who ratified the amendment would have understood it to mean." *Perez v. City of San Antonio*, 715 S.W.3d 709, 715 (Tex. 2025) (citations omitted). We may also "consider contextual factors such as 'the history of the legislation, the conditions and spirit of the times, the prevailing sentiments of the people, the evils intended to be remedied, and the good to be accomplished.'" *Degan v. Bd. of Trs. of Dall. Police & Fire Pension Sys.*, 594 S.W.3d 309, 313 (Tex. 2020) (quoting *Harris Cnty. Hosp. Dist. v. Tomball Reg'l Hosp.*, 283 S.W.3d 838, 842 (Tex. 2009)).

Because we take into account the historical context surrounding the ratification of constitutional language, "we may consider evidence of the contemporaneous explanations and understandings of the legislature that proposed the language." *Perez*, 715 S.W.3d at 716; *see also* TEX. CONST. art. XVII, § 1 (describing the process for amending the Constitution, which begins with a legislative proposal and ends with majority approval by qualified voters). Whereas legislative history accompanying a statute is "generally useless to courts," we have acknowledged that such history "can be relevant" to contextualize constitutional ratification. *Perez*, 715 S.W.3d at 716 n.8 (citation

15

omitted). If historical context suggests that the framers chose words that constitute "a legal term of art" or "carr[y] jurisprudential baggage beyond [their] plain meaning," we must factor such context into our analysis. *Hogan*, 688 S.W.3d at 857, 858.

This Court has not yet had occasion to interpret Section 33. *Cf. Severance*, 370 S.W.3d at 713 n.8 (acknowledging Section 33's adoption but noting it was "not at issue"). We also note that the text central to our facial validity analysis—subsection (d)'s declaration that Section 33 "does not create a private right of enforcement"—is unique. TEX. CONST. art. I, § 33(d). The phrase appears nowhere else in our Constitution or our statutes. Unsurprisingly, the parties advance conflicting arguments about what this language means.

In their jurisdictional pleas, defendants argued that Section 33(d)'s declaration that it "does not create a private right of enforcement" categorically precludes private-party claims seeking Section 33(b)'s enforcement. Defendants assert that only governmental actors may enforce Section 33 and that this reading harmonizes subsection (d) with the Open Beaches Act's longstanding enforcement scheme. The logical endpoint of their claim that only governmental actors may enforce Section 33 is that dismissal of the entire case is warranted here, since all plaintiffs are private actors.[7]

Plaintiffs do not dispute that they are private parties. Rather, they respond that their suit is not a "private right of enforcement"

---

[7] The Attorney General abandoned this argument in the court of appeals, *see* 722 S.W.3d at 443 n.5, and does not press it in this Court. But the GLO and Cameron County consistently pressed the argument in the courts below and continue to do so in this Court.

16

because they do not seek damages or an injunction. For its part, the court of appeals opined that the private right of enforcement referenced in subsection (d) "would most likely take the form of an injunction against a private entity, such as SpaceX, to prohibit their space flight launches that lead to the closure of Boca Chica Beach." 722 S.W.3d at 443. It is not clear whether the court of appeals concluded that a suit must both be brought against a private party *and* seek injunctive relief to fall within the scope of subsection (d). Regardless, we disagree with the court's conclusion because a request for injunctive relief is not necessary to bring a claim within subsection (d)'s ambit and subsection (d)'s applicability does not turn on whether the *defendant* is a private actor.

To discern the meaning voters ascribed to subsection (d) when it was ratified in 2009, we first consider the plain meaning of its text according to contemporaneous sources. *See Perez*, 715 S.W.3d at 716–17. We begin by consulting dictionary definitions. *See, e.g.*, *id.* at 718; *In re Dallas County*, 697 S.W.3d 142, 156–57 (Tex. 2024). "Private right" means a "personal right, as opposed to a right of the public or the state." *Private right*, BLACK'S LAW DICTIONARY (9th ed. 2009). "Public right," by contrast, means a "right belonging to all citizens and usu[ally] vested in and exercised by a public office or political entity." *Public right*, BLACK'S LAW DICTIONARY (9th ed. 2009). And "enforcement" means the "act or process of compelling compliance with a law, mandate, command, decree, or agreement." *Enforcement*, BLACK'S LAW DICTIONARY (9th ed. 2009); *see also Enforcement*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (2002) ("the compelling of the fulfillment (as

17

of a law or order)"); *Enforce*, THE NEW OXFORD AMERICAN DICTIONARY (2001) ("compel observance of or compliance with (a law, rule, or obligation)").

As noted, the focal point of constitutional interpretation is how voters contemporaneously understood the text. Within Section 33, subsection (b) recognizes that the *public* has a right both "individually" and "collectively" to access and use public beaches. TEX. CONST. art. I, § 33(b). By contrast, subsection (d)'s proviso that the amendment "does not create a *private* right of enforcement," *id.* § 33(d) (emphasis added), means Section 33 created no new *personal* right of enforcement for private individuals. Instead, the plain meaning of the text suggests the right to enforce Section 33 resides with public, or governmental, actors.

We next consult the background law that existed at the time of Section 33's adoption because, as a general matter, we "read the constitutional text not in a vacuum but also through the lenses of history and precedent." *Borgelt v. Aus. Firefighters Ass'n, IAFF Loc. 975*, 692 S.W.3d 288, 299 (Tex. 2024); *see also Perez*, 715 S.W.3d at 716 n.8 (collecting cases in which this Court looked to the drafters' understanding of related law in interpreting the Constitution). Our attention to context is especially important where, as here, the constitutional text indicates that it was adopted with reference to preexisting law. That Section 33 does not "create" a private right of enforcement points our attention to the enforcement rights that were already in place regarding open beaches—rights that would remain unchanged after the amendment's passage according to its text.

18

We thus turn to examine the law that existed at the time of Section 33's ratification—the Open Beaches Act itself. Our conclusion above regarding the plain meaning of Section 33's text coheres with the Act's preexisting enforcement scheme. The Act authorizes—indeed, mandates—governmental enforcement of open beaches. For example, the Act states that the GLO's commissioner "shall strictly and vigorously enforce the prohibition against encroachments on and interferences with the public beach easement" and "shall promulgate rules" on related matters. TEX. NAT. RES. CODE § 61.011(c), (d). Further, the commissioner "may order the removal of a structure, improvement, obstruction, barrier, or hazard from a public beach." *Id.* § 61.0183(a). The Act also commands local governments to "adopt a plan for preserving and enhancing access to and use of public beaches within the[ir] jurisdiction" when private development is sought near the beach. *Id.* § 61.015(a). And in a section titled "Enforcement," the Act authorizes "[a]ny county attorney, or the attorney general at the request of the commissioner, [to] bring a suit for a declaratory judgment to try *any issue* affecting the public's right of access to or use of the public beach." *Id.* § 61.018(d) (emphasis added).

In contrast to several provisions vesting responsibility for the Act's enforcement with governmental actors, the Act contains a *single* provision authorizing suits by private parties. Section 61.019 permits property owners whose rights are affected by the Act to bring a declaratory-judgment action against the State. *Id.* § 61.019. Notably,

19

plaintiffs here allege no injury falling within this narrow category of permitted private suits.[8]

In short, the Act includes just one provision authorizing private-plaintiff suits against the *State* in a particular scenario, and it is inapplicable here. By contrast, multiple provisions authorize and require governmental enforcement of the Act. Thus, Section 33's statement that it "does not *create* a private right of enforcement," TEX. CONST. art. I, § 33(d) (emphasis added), signals the framers' understanding that the Act's existing enforcement scheme, involving almost exclusively governmental actors, would continue after Section 33's ratification.

Beyond considering text and context, we also consult contemporaneous public sources to discern original public meaning. *See, e.g.*, *Perez*, 715 S.W.3d at 722 (citing a newspaper editorial to determine public understanding of a constitutional amendment). Our research has revealed only one contemporaneous publication that referenced subsection (d), and it supports our interpretation. A 2009 editorial in the *Corpus Christi Caller–Times* analyzed the proposed constitutional amendment and warned voters of subsection (d)'s important caveat that "enforcement . . . still would be the responsibility of authorities." Editorial, *Yes on Prop. 9, with a couple reservations*, CORPUS CHRISTI CALLER–TIMES, Oct. 24, 2009, at 8A. In a similar vein, the House Research Organization, which publishes reports on proposed

---

[8] Although SaveRGV's petition identifies a member who owned property near Boca Chica Beach and alleges that the beach closures "impacted her ability to use and enjoy her home," she did not sue to determine her property rights and eventually "s[old] her property and move[d] elsewhere."

20

constitutional amendments, noted supporters' belief that Section 33 "would not change current practices," H. Rsch. Org., Focus Report No. 81-8, at 21 (Aug. 20, 2009)—the current practices being those set out under the Open Beaches Act, which vested enforcement authority with the State and local governments, save the one inapplicable provision noted above.

To sum up, text, context, and contemporaneous sources all point in the same direction: Section 33 constitutionalized the public's right to beach access, but it did not expand or confer on private citizens a right of enforcement or otherwise alter the preexisting enforcement scheme, which resided with governmental actors alone.

Plaintiffs respond that we must allow their suit to proceed because of Section 33's placement in Article I—our Constitution's Bill of Rights. This placement is critical, they argue, because constitutional guarantees located within the Bill of Rights are self-executing and thus invoke the judicial power to declare contrary laws void. To support this argument, plaintiffs cite *City of Beaumont v. Bouillion*, 896 S.W.2d 143 (Tex. 1995). In *Bouillion*, former officers of the Beaumont Police Department sued the city, alleging they were punished for exercising their free-speech and assembly rights when they disclosed the Department's legal violations to the press. *Id.* at 144–45. The officers asked this Court to "recognize an implied private right of action for damages" for constitutional violations, akin to the "federal *Bivens*-type cause of action." *Id.* at 146; *see Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 397 (1971) (authorizing suits for damages against federal officials for Fourth Amendment violations);

21

42 U.S.C. § 1983 (authorizing suits against state officials for constitutional violations).

This Court declined to recognize such a claim. Not only was there "no historical basis to create the remedy sought," the Court reasoned, but "the text of the Texas Bill of Rights cuts against an implied private right of action for the damages sought because it explicitly announces the consequences of unconstitutional laws." *Bouillion*, 896 S.W.2d at 148. "When a law conflicts with rights guaranteed by Article 1," the Court explained, "the Constitution declares that such acts are void because the Bill of Rights is a limit on State power." *Id.* at 149. *Bouillion* described this principle as emanating from Article I, Section 29 of our Constitution, which states:

> To guard against transgressions of the high powers herein delegated, we declare that every thing in this "Bill of Rights" is excepted out of the general powers of government, and shall forever remain inviolate, and all laws contrary thereto, or to the following provisions, shall be void.

TEX. CONST. art. I, § 29; *see also Tex. Med. Res., LLP v. Molina Healthcare of Tex., Inc.*, 659 S.W.3d 424, 432 (Tex. 2023) ("[T]he Bill of Rights expressly provides for an equitable action to declare a law void.").

We agree that *Bouillion* stands for the general principle that private citizens can seek to declare statutes conflicting with Article I void—subject, of course, to other legal obstacles any given case may present. But we disagree with plaintiffs' contention that Section 33's placement in Article I means that it, too, automatically invokes the judicial power to award equitable relief from unconstitutional statutes. Section 33 diverges from other Bill of Rights provisions by including

22

*express* language that "[t]his section does *not* create a private right of enforcement." TEX. CONST. art. I, § 33(d) (emphasis added).

We must give meaning, first and foremost, to subsection (d)'s text and consider the backdrop of the Open Beaches Act against which that constitutional provision was adopted. *See, e.g., Oakley v. State*, 830 S.W.2d 107, 109 (Tex. Crim. App. 1992) ("[T]hose who are called on to construe the Constitution should not thwart the will of the people by construing it differently from its plain meaning."). We cannot ignore that the People disclaimed private enforcement suits when they enacted Section 33—after *Bouillion* was decided—to create new constitutional rights. *Cf. BankDirect Cap. Fin., LLC v. Plasma Fab, LLC*, 519 S.W.3d 76, 86 (Tex. 2017) ("Separation of powers demands that judge-interpreters be sticklers . . . about not rewriting statutes under the guise of interpreting them.").

\* \* \*

Section 33's plain text and the historical and legislative context in which it was adopted together compel our conclusion that subsection (d) bars these private plaintiffs' claims. We thus hold that plaintiffs' claims are facially invalid.[9] This jurisdictional defect—the fact that plaintiffs are private, not governmental, actors—cannot be

---

[9] Defendants contend that plaintiffs' claims are facially invalid for a second, independent reason: HB 2623 is a constitutional exercise of the State's police power. Because the jurisdictional challenge based on subsection (d) is dispositive, we express no view on whether the beach closures, or the statutes permitting them, violate the public's "unrestricted" right described in Section 33(b). *See, e.g., Rattray*, 662 S.W.3d at 868 ("When defendants challenge jurisdiction on multiple grounds, courts are . . . not duty-bound to address them all if any one of them warrants dismissal . . . ." (footnote omitted)).

23

cured on remand. Rather, these pleadings "conclusively negate the existence of subject-matter jurisdiction." *Klumb*, 458 S.W.3d at 17; *see also Miranda*, 133 S.W.3d at 227 ("If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiffs an opportunity to amend."). Accordingly, the trial court correctly dismissed the case with prejudice.[10]

## III. Conclusion

The court of appeals erred in concluding it was unnecessary to examine whether plaintiffs alleged a facially valid constitutional claim before determining whether the UDJA waives defendants' immunity. Determining whether a plaintiff's constitutional claim is facially valid is a prerequisite to answering whether immunity bars the suit. Here, plaintiffs' claims challenging HB 2623 as violative of Article I, Section 33 are facially invalid because they constitute an attempted "private right of enforcement," which Section 33(d) forecloses. We reverse the court of appeals' judgment and reinstate the trial court's judgment dismissing all claims for lack of jurisdiction.

Rebeca A. Huddle
Justice

**OPINION DELIVERED:** June 19, 2026

---

[10] We acknowledge that the Tribe's allegations allude to a different kind of injury the beach closures may inflict on its members: interference with their religious practices. Today's holding should not be construed to prohibit the Tribe—or private parties generally—from seeking relief for such injuries they suffer due to HB 2623. We hold only that Section 33 cannot serve as the basis for that relief.

24